IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
7/2/2021
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
DEPUTY CLERK

KELVIN EDWARDS, )
)
    Plaintiff, )
)
v. ) Case No. __6:21CV00035__
)
LIBERTY UNIVERSITY, INC., )
)
**SERVE:**   David M. Corry )
              Registered Agent )
              1971 University Blvd. )
              Lynchburg, VA 24515 )
)
    Defendant. )
)

## COMPLAINT

COMES NOW the Plaintiff, Kelvin Edwards ("Mr. Edwards" or "Plaintiff"), by undersigned counsel, and the law firm of Cook Craig & Francuzenko, PLLC, and hereby states as follows:

### NATURE OF THE CASE

1.     This is an action brought by Plaintiff against Defendant for (1) discrimination based on race under Title VII of the Civil Rights Act of 1964 ("Title VII"), §§ 701, *et seq.*; 42 U.S.C. §§ 2000e, *et seq.* as amended, (2) discrimination based on race under the Virginia Human Rights Act, Va. Code § 2.2-3900, *et seq.*, and (3) breach of contract.

### JURISDICTION AND VENUE

2.     This Court has subject-matter jurisdiction over the federal law claims in this action pursuant to 28 U.S.C. § 1331 because the Complaint alleges violations under Title VII.

3. This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 because the state law claims are "so related to the . . . [federal claims] that they form part of the same case or controversy."

4. This Court has personal jurisdiction over the Defendants because they performed the acts complained of herein within this district.

5. Plaintiff filed a charge of discrimination with the Office of the Attorney General of Virginia, Division of Human Rights on or about January 4, 2021. The Office of the Attorney transferred the Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff was issued a notification of his rights to sue on April 7, 2021.

## PARTIES

7. Mr. Edwards is a 57-year-old African American male resident of the state of Texas.

8. Liberty is a nonstock corporation formed under the laws of the Commonwealth of Virginia. Located in Lynchburg, Virginia, Liberty is "a liberal arts institution with 15 colleges and schools and offers programs in fields such as education, counseling, religion, law, aviation, cinematic arts, business, and more."

## FACTUAL ALLEGATIONS

9. Mr. Edwards is an alumnus of Liberty University ("Liberty").

10. Mr. Edwards played wide receiver on Liberty's football team in the 1980's, and then enjoyed a successful NFL career. In 2009, Mr. Edwards was inducted into Liberty's Athletics Hall of Fame. In October 2019, his Liberty retired his jersey number, #83.

11. In 2012, Liberty's then President, Jerry Falwell, Jr., attempted to recruit Mr. Edwards to work at Liberty.

12. In January 2018, Liberty formed the Office of Equity & Inclusion to lead the development and implementation of initiatives that support Liberty's desire to have culturally and ethnically diverse students, faculty, staff, and leadership, free from all unbiblical and unlawful discrimination.

13. In November 2018, Liberty's Board of Trustees adopted a resolution to advance efforts in diversity across the campus.

14. In late 2019, Mr. Edwards was informed that Liberty was working on creating an executive leadership position that would allow Liberty to utilize Mr. Edwards' skills and experience.

15. In June 2020, Liberty offered Mr. Edwards a position on Liberty's executive leadership team, as Executive Vice President of Management Efficiencies & Diversity.

16. In this role, Mr. Edwards would: (1) advise on management and development of Liberty's policies, staffing, programs, and administration; (2) assess and enhance efficiencies across Liberty's operations; and (3) develop strategies to support Liberty's diversity and inclusion efforts.

17. The offer included an annual salary of $275,000.00, a monthly vehicle of allowance of $1,500.00, full scholarships for Mr. Edwards and his family for undergraduate and graduate degrees, and the construction of a new home for Mr. Edwards and his family on Liberty Mountain.

18. At the time, Mr. Edwards and his family resided in Texas, where Mr. Edwards owned a car dealership and his wife worked as a teacher.

19. Liberty acknowledged that if Mr. Edwards accepted the offer, he would be uprooting his family, sacrificing his established business, and jeopardizing his retirement benefits.

20. However, Liberty offered commitment to his family and further reassurance that Liberty wanted to employ Mr. Edwards for the long-term, no less than ten years or until retirement whichever came first.

21. Based on Liberty's assurances that it was committed to him for no less than ten years, Mr. Edwards accepted Liberty's offer of employment in late June of 2020.

22. Mr. Edwards desired to be a part of Liberty and finish his career on Liberty Mountain.

23. Based on those assurances, Mr. Edwards uprooted his life in Texas and his family and moved to Virginia.

24. On July 1, 2020, Liberty hired Mr. Edwards as an Executive Vice President of Management Efficiencies & Diversity and Mr. Edwards assumed the responsibilities of his new role.

25. In August 2020, Liberty publicly touted the hiring of Mr. Edwards, who was one of very few African American executives in Liberty's history. In doing so, Liberty referenced the formation of the Office of Equity & Inclusion as well as the November 18 resolution to advance efforts in diversity across campus.

26. On August 10, 2020, Liberty appointed a new acting president, Jerry Prevo ("Prevo").

27. On August 13, 2020, Liberty provided Mr. Edwards an executive summary of his role.

28. On or around September 4, 2020, Prevo indicated to Mr. Edwards that he felt that there was confusion about Mr. Edward's role at the University. Prevo also told Mr. Edwards that he did not recall approving this job description.

29. It became clear that Prevo's confusion could be explained by the fact that Prevo did not believe in diversity efforts based at Liberty. In fact, during that same time frame, Mr. Edwards heard Prevo comment that there were "too many people" in diversity and inclusion.

30. Currently, pursuant to Liberty's website[1], there are approximately 28 executive and senior leadership positions.

31. Out of those 28 positions, only two are filled by African Americans.

32. Those two positions are "Vice President for Inclusion, Diversity and Equity" and "Executive Vice President of Inclusion Diversity and Equity."

33. Prevo's confusion ultimately led to a meeting on September 28, 2020, between Prevo and Mr. Edwards.

34. In that meeting, Prevo informed Mr. Edwards that Mr. Edwards would no longer be acting in the role of Executive Vice President of Management Efficiencies & Diversity.

35. Prevo wanted Mr. Edwards to fill a different position.

36. Prevo told Mr. Edwards that he wanted him to report to Turner Gill ("Gill"), the only other African American on Liberty's executive leadership team at that time. Gill was hired at the same time as Mr. Edwards.

37. Prevo also informed Mr. Edwards that Prevo would take over the role of efficiency management.

38. Mr. Edwards inquired as to what working under Gill meant and whether that would be in the inclusion and diversity department.

39. In response, Prevo dismissively stated that Mr. Edwards would be doing "whatever [Turner Gill] is doing."

---

[1] Liberty University: About Liberty, https://www.liberty.edu/aboutliberty/index.cfm?PID=6911. Last visited July 2, 2021.

5

40. Prevo did not, could not, or simply would not provide any further details about the position except that Mr. Edwards would report to Gill, the only other African American on Liberty's executive leadership team.

41. Further, Prevo made it clear that Mr. Edwards would no longer be part of the executive leadership team and that he would be taking a pay cut.

42. Prevo closed the meeting by telling Mr. Edwards to "sit tight," "think about it," and "let me know."

43. Mr. Edwards informed Prevo that he wanted to be a part of Liberty and was going to sit tight for more information as to this new position under Gill.

44. A few weeks later, Prevo further notified Mr. Edwards that his employment with Liberty was terminated on October 2, 2020. Prevo did this without having any further discussions with Mr. Edwards about his new role or what would be his duties and responsibilities.

45. Prior to the termination, Prevo re-assigned the duties of efficiency management to himself, a white male, and stated that there was too much invested in diversity, meaning too many minority executives.

## COUNT I
### (Title VII – Discrimination Based on Race)

46. Plaintiff restates and re-alleges the allegations contained in the proceeding paragraphs of the Factual Allegations section as if fully set forth herein.

47. Plaintiff is a member of a class protected by Title VII of the Civil Rights Act of 1964, that is, African American.

48. Plaintiff suffered adverse employment actions when he was demoted and then when he was subsequently terminated.

6

49. At the time of his demotion, Mr. Edwards role in efficiency management was assumed by Prevo, a white male.

50. Defendant removed Mr. Edwards from the executive leadership position because Prevo believed that there were too many people in diversity and inclusion at Liberty and because there was already one African American male on the executive team.

51. The position was newly created for the purposes of expanding diversity and inclusion at Liberty University. Thus, the purpose of the position is inherently associated with race.

52. At the time of his demotion and termination, Plaintiff was qualified for the for the position, had been recruited for years prior to his employment, and was reasonably meeting Defendant's legitimate business expectations.

53. Upon information and belief, at the time of his termination, no other executives had been terminated or departments consolidated and/or reduced.

54. Defendant's actions against Mr. Edwards were discriminatory based on Mr. Edwards's race in violation of Title VII.

55. As a result of Defendant's discrimination Plaintiff suffered, and continues to suffer, embarrassment, emotional distress, loss of self-esteem, and past and future wage loss.

### COUNT II
### (Va. Human Rights Act – Discrimination Based on Race)

56. Plaintiff restates and re-alleges the allegations contained in the proceeding paragraphs of the Factual Allegations section as if fully set forth herein.

57. Plaintiff is a member of a class protected by the Virginia Human Rights Act, Va. Code § 2.2-3900, *et seq.*, that is, African American.

58. Plaintiff suffered adverse employment actions when he was demoted and then when he was subsequently terminated.

59. At the time of his demotion, Mr. Edwards role in efficiency management was assumed by Prevo, a white male.

60. Defendant removed Mr. Edwards from the executive leadership position because there were too many people in diversity and inclusion.

61. The position was newly created for the purposes of expanding diversity and inclusion at Liberty University. Thus, the purpose of the position is inherently associated with race.

62. In other words, there were too many African Americans in leadership.

63. At the time of his demotion and termination, Plaintiff was qualified for the for the position, had been recruited for years prior to his employment, and was reasonably meeting Defendant's legitimate business expectations.

64. Upon information and belief, at the time of his termination, no other executives had been terminated or departments consolidated and/or reduced.

65. Defendant's actions against Mr. Edwards were discriminatory based on Mr. Edwards's race and in violation of Title VII.

66. As a result of Defendant's discrimination Plaintiff suffered, and continues to suffer, embarrassment, emotional distress, loss of self-esteem, and past and future wage loss.

## COUNT III
### (Race Discrimination in Violation of 42 U.S.C. § 1981)

67. Plaintiff restates and re-alleges the allegations contained in the proceeding paragraphs of the Factual Allegations section as if fully set forth herein.

68. Plaintiff is African American.

69. Defendant offered Plaintiff a position of employment and leadership with Liberty University as an Executive Vice President of Management Efficiencies & Diversity at Liberty University.

70. Defendants offered to pay Plaintiff a salary of $275,000.00 and provide benefits including a monthly vehicle of allowance of $1,500.00, full scholarships for Plaintiff and his family for undergraduate and graduate degrees, and the construction of a new home for Plaintiff and his family on Liberty Mountain.

71. As part of this offer, Defendant also represented that it was committed to Plaintiff for no less than ten years or until Plaintiff's retirement whichever came first.

72. Based on those representations and assured commitment, Plaintiff agreed to those terms.

73. Plaintiff uprooted his life in Texas and his family and moved to Virginia to serve as an Executive Vice President of Management Efficiencies & Diversity at Liberty University.

74. Shortly after Plaintiff began working in his new role Plaintiff suffered adverse employment actions when he was demoted and then when he was subsequently terminated.

75. At the time of his demotion, Mr. Edwards role in efficiency management was assumed by Prevo, a white male.

76. Defendant removed Mr. Edwards from the executive leadership position because Prevo believed that there were too many people in diversity and inclusion at Liberty and because there was already one African American male on the executive team.

77. The position was newly created for the purposes of expanding diversity and inclusion at Liberty University. Thus, the purpose of the position is inherently associated with race.

78. Upon information and belief, at the time of his termination, no other executives had been terminated or departments consolidated and/or reduced.

79. Defendant's actions denied Plaintiff's equal rights.

80. As a result of Defendant's actions, Plaintiff suffered, and continues to suffer, embarrassment, emotional distress, loss of self-esteem, and past and future wage loss.

## COUNT IV
### (Breach of Oral Contract)

81. Plaintiff restates and re-alleges the allegations contained in the proceeding paragraphs of the Factual Allegations section as if fully set forth herein.

82. Defendant offered Plaintiff a position of employment and leadership with Liberty University as an Executive Vice President of Management Efficiencies & Diversity at Liberty University.

83. Defendants offered to pay Plaintiff a salary of $275,000.00 and provide benefits including a monthly vehicle of allowance of $1,500.00, full scholarships for Plaintiff and his family for undergraduate and graduate degrees, and the construction of a new home for Plaintiff and his family on Liberty Mountain.

84. As part of this offer, Defendant also represented that it was committed to Plaintiff for no less than ten years or until Plaintiff's retirement whichever came first.

85. Based on those representations and assured commitment, Plaintiff agreed to those terms.

86. Plaintiff uprooted his life in Texas and his family and moved to Virginia to serve as an Executive Vice President of Management Efficiencies & Diversity at Liberty University.

10

87. Shortly after Plaintiff began working in his new role, Defendant breached the agreement by removing Plaintiff from the position and subsequently terminating the relationship all together.

88. As a result, Plaintiff has suffered damages to include his lost wages, lost benefits, and expenses related to moving, housing, and travel.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Kelvin Edwards, demands judgment against the defendant, Liberty University, Inc., as follows on all Counts:

(a) Lost wages in excess of $275,000.00 or in an amount to be proven at trial for violations of Title VII (Count I);

(b) $275,000.00 in future lost wages for violations of Title VII (Count I);

(c) $300,000 in compensatory damages for violations of Title VII (Count I);

(d) $300,000 in punitive damages for violations of Title VII (Count I);

(e) Lost wages in excess of $275,000.00 or in an amount to be proven at trial for violations of the Virginia Human Rights Act (Count II);

(f) $275,000.00 in future lost wages for violations of the Virginia Human Rights Act (Count II);

(g) $300,000 in compensatory damages for violations of the Virginia Human Rights Act (Count II);

(h) $350,000 in punitive damages for violations of the Virginia Human Rights Act (Count II);

(i) $3,000,000.00 in damages for violation of 42 U.S.C. § 1981 (Count III);

(j) $3,000,000.00 in damages for Breach of Contract (Count IV);

(k) Plaintiff's attorneys' fees and court costs as provided by 42 U.S.C. § 2000e-5(g)(2)(B)(i); Va. Code § 2.2-3908(B); and 42 U.S.C. § 1988.

(l) Pre- and post-judgment interest; and

(m) All other further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury on all issues so triable.

Respectfully submitted,

*[signature]*

Philip C. Krone, VSB 87723
Broderick C. Dunn, VSB 74847
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone: (703) 865-7480
Fax: (703) 434-3510
pkrone@cookcraig.com
bdunn@cookcraig.com
*Counsel for Plaintiff*

*[signature]*